# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

# BEAUFORT DIVISION

STEPHEN ROSENBERG,    )
                )
        Plaintiff,   )   Civil Action No. 9:06-3203-MJP-BM
                )
v.               )
                )
THE STATE OF SOUTH    )   **REPORT AND RECOMMENDATION**
CAROLINA, ET.AL,     )
                )
       Defendants.  )
_____)

        This action has been filed by the Plaintiff, <u>pro se</u>, asserting claims against the named Defendants under 42 U.S.C. §§ 1983 and 1985.  Plaintiff alleges that his civil rights were violated when he was "extradited from the State of Maryland over his objection and should not have been extradited where there was no valid arrest warrant, no properly executed extradition warrant, and where no charges had been accepted for prosecution."  <u>Complaint</u>, at ¶ 3.   Plaintiff also asserts several pendant state law causes of action.

        All of the Defendants except the Defendant Frank Watson filed a motion to dismiss pursuant to Rule 12, Fed.R.Civ.P., on March 15, 2007.  The Defendant Watson thereafter filed his own motion to dismiss on March 19, 2007.  As the Plaintiff is proceeding <u>pro se</u>, <u>Roseboro</u> orders were entered by the Court on March 16, 2007 and March 20, 2007, respectively, advising Plaintiff

1



of the importance of a dispositive motion and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motions may be granted, thereby ending his case.

Plaintiff filed a memorandum in opposition to the pending motions to dismiss on April 19, 2007, and supplemented this filing with an additional filing on April 30, 2007. The Defendants (except for the Defendant Watson) also filed a supplemental memorandum on April 30, 2007 in support of their motion to dismiss, to which the Plaintiff filed a memorandum in opposition on May 16, 2007. Defendants' motions are now before the Court for disposition.[1]

### Background

Plaintiff previously filed a lawsuit in this Court against many of these same Defendants. See Rosenberg v. State of South Carolina, et al., C/A No. 0:02-2867. Plaintiff's previous lawsuit was summarily dismissed. See Order filed October 15, 2003. Aloe Creme Laboratories, Inc. v. Francine Co., 425 F.2d 1295, 1296 (5th Cir. 1970) [This Court may take judicial notice of its own records.].

In his present action, Plaintiff sets forth many of the same "background" facts as were contained in his previous complaint, and then adds additional allegations. Plaintiff alleges in a verified Complaint[2] that on January 11, 2000 he purchased the right to be the "Increte distributor"

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e), D.S.C. The Defendants have filed motions to dismiss. As these are dispositive motions, this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se litigants are to be considered as affidavits to the extent the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).



for Jasper and Beaufort Counties, South Carolina.  The Defendant Watson is alleged to have been Plaintiff's Director of Operations for this business.   Plaintiff alleges that on Christmas Day 2000, a Santiago Velasquez, who was employed by Watson, was involved in a DUI hit and run accident with a Town of Hilton Head ambulance while driving a vehicle either owned by Watson or that had been sold to him by Watson.  Plaintiff alleges, however, that it was he [Plaintiff] who was charged with this accident, even though (according to the Plaintiff) he did not own the vehicle and was not in the State at the time of the accident.

Plaintiff alleges that on March 4, 2001 he went to the office of the Beaufort County Sheriff to have charges filed against Watson for breach of trust, forgery, and for stealing money from Plaintiff's business.  Plaintiff alleges, however, that the court clerk refused to provide him with warrants, but nevertheless advised him that Watson would be arrested within twenty-four (24) hours. Plaintiff alleges that subsequently, on March 7, 2001, he discovered that Watson had illegally fabricated a check for $2,000.00 on a computer, drawn on Plaintiff's company account, and payable to Watson's wife (the Defendant Gay Watson).[3]  Plaintiff alleges that Watson had also issued another fraudulent check to Chase Mortgage.  Plaintiff alleges he faxed and mailed copies of these two checks to Gay Watson along with a letter.  At that time, warrants had still not been served on the Watsons.

Plaintiff alleges that on April 7, 2001, the Defendant Deputy Sheriff Townsend charged him with harassment and blackmail as a result of the faxes and checks he had sent to Gay Watson, and that he was arrested on April 11, 2001 on warrants signed by Beaufort County Magistrate Bubba Smith. Plaintiff alleges that subsequently, on April 12, 2001, Townsend filed two

---

[3]Gay Watson was an employee of the Town of Hilton Head.



more charges against him: giving false information to law enforcement (pertaining to Watson's station wagon) and grand larceny of a "buffering machine", which Plaintiff alleges had been given to him by a Jeff Rigg. Plaintiff alleges that he was released from the Beaufort County Detention Center on his own recognizance on April 14, 2001, although he had also been charged by the Town of Hilton Head with three (3) additional municipal charges - abandoned vehicle, sleeping in a building, and unsafe building. Plaintiff alleges that following his release, he returned to his native Virginia.

Plaintiff alleges that on May 6, 2001 he drove from Virginia to Hilton Head for a scheduled May 8, 2001 hearing. Plaintiff believed (per his South Carolina attorney, Michael Wyman) that all of the charges against him had either been dismissed or were going to be dismissed. Plaintiff does not explain what happened at the May 8, 2001 hearing, or even state whether this hearing was held. However, he alleges that on July 19, 2001 (apparently after he had returned to Virginia) he was informed by a Virginia sheriff's deputy that there was a fugitive warrant for his arrest from South Carolina. Plaintiff alleges that he was thereafter arrested by Virginia sheriff's deputies on August 20-21, 2001, following which he informed a Fairfax (Virginia) County judge that he would not waive extradition to South Carolina. Plaintiff alleges that South Carolina Circuit Judge Jackson Gregory thereafter issued a bench warrant for his arrest on August 27, 2001.

Plaintiff alleges that on September 20, 2001, he appeared before a Fairfax County judge for his "30-day extradition hearing", at which no one from South Carolina was present. Plaintiff alleges, however, that on September 21, 2001 South Carolina Governor Jim Hodges issued a warrant for his extradition, and that on October 12, 2001 Virginia Governor James Gilmore signed the order for his arrest, which stated that Plaintiff had "fled from justice" in South Carolina.

4



Plaintiff alleges that on October 19, 2001, he appeared before a Fairfax County District Court judge for a "60-day hearing", at which South Carolina officials were present. Plaintiff alleges that Townsend had informed Fairfax County that there were several warrants pending against him for "violation of probation and violation of emergency protective order". Plaintiff alleges that he was denied bond and continued to be held in custody in Virginia, with his writs of habeas corpus filed with the Virginia Courts being denied.[4]

Plaintiff alleges that on July 3, 2002, his sister-in-law received a letter from the municipal court of Hilton Head informing her that Plaintiff had been found guilty of "unsafe building/warehouse", Abandoned Vehicle - Frank Watson's station wagon[,] and LMO Violation-Development", and that he had been fined $1,000.00 per charge. Plaintiff alleges that thereafter on July 12, 2002, he was transported from Virginia to the Beaufort County Detention Center, where he was placed in a "cell pod" with inmates charged with murder and attempted murder. Plaintiff alleges that he filed a motion to dismiss his charges in Beaufort County with Judge Gregory, but that he never received a response.

Plaintiff alleges that on July 31, 2002, he was informed by his public defender (Gene Hood) that the Beaufort County Solicitor now realized that Gay Watson's charges of harassment and blackmail were not valid, but that before the charges could be dismissed he had to talk with Gay Watson. Plaintiff alleges that on August 9, 2002 he believed he was going to be released on bond, but was later told that the Beaufort County magistrate had found him guilty on the unsafe building/warehouse, abandoned vehicle and LMO Violation-Development charges, and had

---

[4]It was around this time that Plaintiff filed his previous lawsuit asserting claims against many of the same Defendants named in the present lawsuit, relating to these issues and his arrest.



sentenced him to thirty (30) days on each charge, to be served consecutively, meaning that he would have to spend sixty (60) more days in jail. However, Plaintiff alleges that he was then informed by Hood on August 12, 2002 that the Beaufort County magistrate had changed his sentences to run concurrently, and that he could be released on a $2,000.00 bond with a condition that he not have any contact with Gay Watson.[5] Plaintiff alleges that he was released on August 12, 2002 after posting bond, but without having received any paperwork. Plaintiff's bond was apparently being posted by a Mike Reilley. Plaintiff was also apparently released from custody even though Reilley had not posted the bond (it is unclear how this occurred), but Plaintiff alleges that he was thereafter told by Hood that he should immediately get out of South Carolina because he could be shot on sight since he had "escaped" from the detention center. Plaintiff alleges that he flew back to Virginia on August 13, 2002.

Plaintiff alleges that almost a year later, on August 21, 2003, he was arrested in Baltimore County, Maryland on a non-fugitive warrant from South Carolina. Plaintiff alleges that he arrived in Beaufort, South Carolina on November 13, 2003, where he had allegedly been accused of "threatening the life of a public official" (having made threats against various judges in South Carolina). Plaintiff alleges that he was denied bond on November 14, 2003, and again on April 4, 2004, at which time Circuit Judge Alexander Macaulay ordered that a mental evaluation be performed on the Plaintiff. Plaintiff alleges that this evaluation was performed at the Institute of Psychiatry at the Medical University of South Carolina on May 20 - July 1, 2004, following which a hearing was held on September 1, 2004 before Circuit Judge Diane Goodstein. Plaintiff alleges

---

[5]Plaintiff alleges that a third condition for his release, that he be banned from contacting any judge in South Carolina, was later added to his bond conditions.



that Judge Goodstein remanded him to the State Hospital, where he was confined from October 11 to December 10, 2004 on a diagnosis of being "delusional". Plaintiff alleges that he was forced to take various anti-psychotic drugs during this period of time. Plaintiff alleges that another hearing was held on June 23, 2005, at which time Circuit Judge Markley Dennis committed Plaintiff to a state mental hospital. Plaintiff alleges that it was not until October 12, 2005 that Probate Judge David Anderson found that there was no clear and convincing evidence to warrant retaining and admitting Plaintiff as an involuntary health patient, and that Judge Anderson signed an order on October 28, 2005 dismissing the petition for involuntary admission. Plaintiff was thereafter released from the Beaufort County Detention Center on or about November 10, 2005. See generally, Complaint, pp. 6-17. On April 17, 2006, Plaintiff's indictments were nolle prossed with leave to re-indict, based on Plaintiff not being competent to stand trial.[6]

In his Complaint, Plaintiff alleges that he was subjected to an unconstitutional arrest, extradition and incarceration as well as "other deprivations of constitutional rights alleged herein" by the Defendants Solicitor's office and deputy solicitors in violation of § 1983 (Count 1); that the Defendant Beaufort County, through the Sheriff's Department, pursued policies, practices and customs that were a direct and proximate cause of his unconstitutional arrest, extradition and incarceration, and other deprivations alleged in violation of § 1983 (Count 2); that the Defendant Sheriff's officers violated his rights under § 1983 in causing these deprivations (Count 3); that the Defendant McMaster (Attorney General of South Carolina) violated his rights by causing an

---

[6]Court records reflect that Plaintiff had been indicted by the Beaufort County (South Carolina) Grand Jury on December 18, 2003 on three counts of threatening the life of a public official. St. Louis Baptist Temple, Inc. V. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979) [federal courts may take notice of judicial proceedings in other courts if they have a direct relation to matters at issue].



extradition warrant to be issued against him without probable cause, resulting in his unlawful detention, in violation of § 1983 (Count 4); that the Defendant South Carolina, through its Governor and Attorney General, is subject to liability for this conduct (Counts 5 and 6); and that each Defendant in their individual and official capacities unlawfully conspired with each other to commit these acts in violation of 42 U.S.C. § 1985 (Count 48).

In addition to these federal counts, Plaintiff asserts numerous pendant state law claims against various Defendants for defamation, abuse of process, intentional infliction of emotional distress, false imprisonment, false arrest, malicious prosecution, and conspiracy under South Carolina Common Law (Counts 7-45, 47).  Plaintiff also asserts a claim against the Defendants for violation of Maryland's Uniform Criminal Extradition Act (Count 46).

### Discussion

When considering a motion to dismiss pursuant to Rule 12(b), the Court is required to "accept the allegations in the complaint as true, and draw all reasonable factual inferences in favor of the Plaintiff. [The motion can be granted] only if no relief could be granted under any set of facts that could be proved." Southmark Prime Plus L.P. v. Falzone, 776 F.Supp. 888, 890 (D.Del. 1991); (quoting Turbe v. Government of Virgin Islands, 938 F.2d 427, 428 (3rd Cir. 1991)). Additionally, the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972).  As the Plaintiff is proceeding pro se, his pleadings are considered pursuant to this liberal standard.  However, even though summary dismissal of a case pursuant to Rule 12 is disfavored, Cardio-Medical Associates Ltd. v. Crozer-Chester Medical Center, 536 F.Supp. 1065, 1072 (E.D.Pa. 1982), the requirement of liberal construction does not mean that the



Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. <u>Weller v. Department of Social Services</u>, 901 F.2d 387 (4th Cir. 1990).

## I.

### (Claims at Issue)

As noted, Plaintiff had previously filed a civil lawsuit which included many of the same claims and allegations set forth in the case at bar, raising the issue of whether the decision summarily dismissing Plaintiff's previous claims was <u>res judicata</u> for purposes of Plaintiff's present lawsuit. Plaintiff has himself resolved this issue as, notwithstanding his recitation of a series of alleged facts dating back to January 11, 2000, Plaintiff affirmatively states in his brief in opposition to the public Defendants' motion to dismiss that the current case before the Court is only asserting claims "for events arising from actions occurring on or after August 21, 2003." <u>See</u> <u>Plaintiff's Brief</u>, at p. 2. Therefore, only the factual allegations of the Complaint occurring on or after that date have been considered for purposes of Defendants' motions to dismiss.

Further, in his brief in opposition Plaintiff has moved to dismiss Counts 2, 4-6, 13-18, 22-39, and 46 in their entirety. Plaintiff is also dismissing the Solicitor's Office from his claims asserted in Counts 1 and 7-12 (but not his claims individually against solicitors Stone and Knight). <u>See</u> <u>Plaintiff's Brief in Opposition</u>, at pp. 2-3. Therefore, the only federal claims remaining before this Court for consideration are Plaintiff's claims under § 1983 against the individual Defendants Stone and Knight as set forth in Count 1 of his Complaint, and against the individually named Sheriff's deputies Tanner, Townsend and Norburg as set forth in his third cause of action, as well as the § 1985 conspiracy count against all named Defendants as set forth in his forty-eighth cause



of action.  Plaintiff's pendant state law claims against Stone and Knight as set forth in his seventh through twelfth causes of action, his pendant state law claims against the Defendants Tanner, Townsend and Norburg as set forth in his nineteenth through twenty-first causes of action, his pendant state law claims against the Defendants Watson as set forth in his fortieth through forty-fifth causes of action, and his common law conspiracy claim as to all Defendants as set forth in his forty-seventh cause of action, also remain.  As previously noted, all of these claims relate only to events arising from actions occurring on or after August 21, 2003.

## II.

## (Issue of Statute of Limitations)

With respect to Plaintiff's federal claims, he was required to bring this lawsuit within three (3) years from the action or conduct giving rise to the cause of action.  Wilson v. Garcia, 471 U.S. 261, 265-267 (1985); Elridge Vanderhorst Hills v. Kershaw Correctional Institution (KCI) Officers, No. 05-2079, 2006 WL 3832802 (D.S.C. Dec. 28,  2006); see S.C.Code Ann. § 15-3-530(5), as amended.  Further, none of Plaintiff's state law claims has a greater than three (3) year statute of limitations. See S.C.Code Ann. § 15-78-110; S.C.Code Ann. § 15-3-550(1); S.C.Code Ann. § 15-3-530(5). For purposes of Plaintiff's claims, the statute of limitations began to run when Plaintiff knew or had reason to know of his alleged claim or injury.  Hoffman v. Tuten, 446 F.Supp.2d 455, 459 (D.S.C. 2006); Jones v. City of Folly Beach, 483 S.E.2d 770, 774 (S.C. Ct.App. 1997);  S.C.Code Ann. § 15-78-110.

Plaintiff alleges in his Complaint that he was arrested in Maryland on the South Carolina warrant on August 21, 2003, and was thereafter returned to South Carolina and held until he was released from the Beaufort County Detention Center on or about November 10, 2005.

10



Plaintiff alleges that these actions violated his civil rights because he "should not have been extradited when there was no arrest warrant, no properly executed extradition warrant, and where no charges had been accepted for prosecution." Defendants argue that under these allegations Plaintiff's cause of action occurred on August 21, 2003, a fact which Plaintiff concedes in his brief; see Plaintiff's Brief in Opposition, pp. 5-6; and that he therefore had until August 21, 2006 to file this action. Plaintiff did not file the Complaint in this matter until November 13, 2006.

However, while not contesting that August 21, 2003 was the accrual date for this lawsuit, Plaintiff argues that his placement in state mental facilities following his return to South Carolina tolled the three (3) year limitations period, citing to S.C.Code Ann. § 15-3-40. That statute provides, inter alia, that the time for the commencement of an action is tolled for a plaintiff who was "insane" at the "time the cause of action accrued", with the period within which the action must be brought extended to not longer than one year after the disability ceases. Under South Carolina law, "insanity" for purposes of § 15-3-40 is defined as follows:

> Insanity or mental incompetency that tolls the statute of limitations consists of a mental condition which precludes understanding the nature or effects of one's acts, an incapacity to manage one's affairs, an inability to understand or protect one's rights, because of an over-all inability to function in society, or the mental condition is such as to require care in a hospital.

Wiggins v. Edwards, 442 S.E.2d 169, 170 (S.C. 1994).

Plaintiff argues that under § 15-3-40, the period of time he was confined in jail and/or mental institutions tolled his limitations period until he was released on November 10, 2005, following which he had one year to file this lawsuit. Plaintiff further argues that, since the federal courts were closed on November 10, 2006 in observance of Veteran's Day and did not re-open until November 13, 2006 (the date he filed his Complaint), this action was timely filed. There are two

11



problems, however, with Plaintiff's argument.

First, § 15-3-40 clearly provides that it applies only if the plaintiff is insane (as that term is defined in <u>Wiggins</u>) "at the time the cause of action accrued".  Plaintiff did not meet the definition for tolling the statute of limitations under <u>Wiggins</u> until April 4, 2004, when he was ordered committed by Judge Macaulay for a mental evaluation. <u>See also</u> S.C.Code Ann. § 15-3-50 [no person shall avail himself of a disability unless it existed when his right of action accrued.] As for the time period prior to April 4, 2004,  Plaintiff affirmatively alleges in his Complaint that he was *not* insane and even that his eventual placement in a mental facility was "unnecessary". Therefore, Plaintiff himself alleges (for purposes of his lawsuit) that he was not "insane" at the time his cause of action accrued on August 21, 2003.

Further, even assuming Plaintiff was otherwise entitled to a tolling of the statute of limitations while he was hospitalized or in custody for evaluation, the date this disability ceased was not November 10, 2005, the date he was ultimately released from the custody of the Beaufort County Detention Center.  Rather, the applicable date was October 28, 2005, the date the petition for his involuntary admission was dissolved. <u>Complaint</u>, ¶ 47.  The fact that Plaintiff was still being held thereafter because of pending criminal charges, and was not finally released from custody until November 10, 2005, has no application to the limitations period granted to "insane" persons under § 15-3-40.  Plaintiff clearly did not file this action within one (1) year of October 28, 2005, even assuming he was entitled to a tolling of the statute to that date. Therefore, Plaintiff failed to timely file this lawsuit, at least with respect to all claims accruing on August 21, 2003, and those claims are subject to dismissal. *Cf.* <u>Wright v. Oliver</u>, No. 95-6546, 1996 WL 531299 (4th Cir. Aug. 15, 1996).



## III.

### (Possible Tolled Federal Claims)

Notwithstanding Plaintiff's concession that the claims he is asserting in this case accrued on August 21, 2003, in light of his pro se status the undersigned has further examined his claims and allegations to determine if at least some of his claims may nevertheless fall outside of the constraints of § 15-3-40.  Having conducted this review, the undersigned concludes that, to the extent Plaintiff is asserting a malicious prosecution claim, a cause of action does not accrue for this claim until the criminal proceedings at issue have been terminated in the Plaintiff's favor.  Brooks v. City of Winston-Salem,  85 F.3d 178, 183 (4th Cir. 1996) [Claim for malicious prosecution does "not accrue until a favorable termination is obtained."]; see Heck v. Humphrey, 512 U.S. 477 (1994).  However, even with respect to this claim, Plaintiff is barred from pursuing a § 1983 lawsuit at this time under Heck, which states in pertinent part:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm whose unlawfulness would render a conviction or sentence invalid, . . . a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.  Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.  * * *

Heck v. Humphrey, 512 U.S. at 486-487.

Therefore, before Plaintiff may pursue a claim for malicious prosecution, he must first demonstrate the "termination of the prior criminal proceeding[s] in favor of the accused." Heck, 512 U.S. at 484.  Plaintiff has presented no such evidence.  The records from Plaintiff's 2003



criminal cases clearly show that these indictments were nolle prossed with leave to re-indict, and that they were only nolle prossed because the prosecutor had made a determination that Plaintiff was not competent to stand trial at that time. See Attached Exhibits (Indictments). Under these facts, this is not a favorable disposition of these charges under South Carolina law. McKenney v. Jack Eckerd Co., 402 S.E.2d 887-888 (S.C. 1991); *cf.* Washington v. Summerville, 127 F.3d 552, 557 (7th Cir. 1997) ["The plaintiff has the burden of proving a favorable termination. (citation omitted). The plaintiff meets his burden of proof only when he establishes the nolle prosequi was entered for reasons consistent with his innocence. (citation omitted). The circumstances surrounding the cessation of the criminal proceedings must compel an inference that reasonable grounds to pursue the criminal prosecution were lacking." (citation omitted)], cert. denied, 118 S.Ct. 1515 (1998); Nicholas v. Wal-Mart Stores, Inc., No. 01-1441, 2002 WL 506424 at **2 (4th Cir. Apr. 4, 2002) [Finding the district court erred in denying summary judgment on plaintiff's malicious prosecution claim where Plaintiff did not produce sufficient evidence from which it could be inferred that the reason for the nolle prosse of her charges was her innocence]; see also Norris v. Patsy, No. 94-2583, 1994 WL 443456 (N.D.Cal., July 29, 1994) [noting that under Heck v. Humphrey, "[a] judgment in favor of the plaintiff here would imply the invalidity of pending state criminal proceedings which have not already been invalidated; ... therefore, any request for damages pertinent to said proceedings is premature and must be DISMISSED."]; Lambert v. Williams, 223 F.3d 257, 260-261 (4th Cit. 2000) [claim for malicious prosecution requires a showing that the initiation or maintenance of a proceeding against the plaintiff was without probable cause to support it and a termination thereof occurred in favor of the plaintiff], cert. denied, 531 U.S. 1130 (2001); Brooks, 85 F.3d at 183 [Claim for malicious prosecution does "not accrue until a favorable termination is obtained."];

14



Therefore, this claim by the Plaintiff (set forth in his first and third causes of action) should be dismissed without prejudice. <u>Abrahm v. Jay</u>, No. 94-601, 1994 WL 387873 (N.D.Cal., July 12, 1994) [A dismissal under <u>Heck v. Humphrey</u> "is without prejudice to plaintiff re-raising his claim for damages once a cause of action has accrued."].[7]

## IV.

### (State Claim for Malicious Prosecution)

It is not clear whether <u>Heck's</u> restrictions apply to malicious prosecution claims brought under state law, as opposed to pursuant to § 1983. Nevertheless, the same rationale applies.

To bring a state law claim for malicious prosecution, Plaintiff must show the termination of the underlying criminal proceedings in his favor. <u>Lynch v. Toys "R" Us- Delaware, Inc.</u>, ___S.E.2d ___, 2007 WL 4230799, *4 (S.C. App. Nov. 27, 2007); <u>Guider v. Churpeyes, Inc.</u>, 653 S.E.2d 562, 565 (S.C.App. 2006). As previously noted, the Plaintiff's criminal charges were not resolved in his favor, and he has therefore failed to show the necessary elements to proceed with the state law malicious prosecution claim set forth in his eighth cause of action.

## V.

### (State Law Claims for False Arrest/Imprisonment)[8]

As for Plaintiff's state law claims for false arrest/imprisonment, it is not clear whether the accrual date for these claims is effectively stayed until a resolution of the underlying charges (as

---

[7]While Plaintiff also references false arrest as part of these causes of action, such a claim ceases upon issuance of proper process - such as the indictments in this case (although they may thereafter be pursued as malicious prosecution claim), and therefore accrued on August 21, 2003, the date of his arrest. <u>Wallace v. Kato</u>, 127 S.Ct. 1091, 1095-1096 (2007).

[8]"False arrest and false imprisonment overlap; the former is a species of the latter." <u>Wallace v. Kato</u>, 127 S.Ct. at 1095.



noted, <u>Heck</u> did not stay Plaintiff's *federal* false arrest claims; <u>see</u> n. 7, <u>supra</u>).  However, even if these claims did not accrue at the time of Plaintiff's arrest, they are without merit.

Plaintiff bases these claims on his allegations that he was arrested and extradited even though "no charges had been accepted for prosecution."  <u>Complaint</u>, p. 16.  This allegation is, of course, refuted by the public records of the General Sessions Court for Beaufort County.  <u>Roth v. Jennings</u>, 489 F.3d 499, 509 (2d Cir. 2007).  Plaintiff further argues that he has sufficiently pled a claim for false arrest and/or imprisonment because there was no probable cause for his arrest.  <u>Plaintiff's Brief in Opposition (Court Docket No. 35)</u>, pp. 12-13.  However, the filing of indictments in and of itself establishes probable cause.  <u>Kalina v. Fletcher</u>, 522 U.S. 118, 129 (1997); *cf.* <u>Law v. South Carolina Dep't of Corrections</u>, 629 S.E.2d 642, 649 (S.C.  2006) ["South Carolina has long embraced the rule that a true bill of indictment is prima facie evidence of probable cause in an action for malicious prosecution."].

In order to establish the elements for such a claim, Plaintiff must show that the restraint and/or imprisonment was unlawful.  <u>Gist v. Berkley County Sheriff's Department</u>, 521 S.E.2d 163, 167 (S.C.Ct.App. 1999).  Plaintiff has made no showing that he was unlawfully restrained, as he has failed to present any evidence that he was arrested without probable cause.  <u>See</u>, discussion, <u>supra</u>; *cf.* <u>Jones v. City of Columbia</u>, 389 S.E.2d 662, 663 (S.C. 1990) ["an action for false imprisonment cannot be maintained where one is arrested by lawful authority"].  Therefore, Plaintiff's state law claims for false arrests and/or imprisonment as set forth in his ninth, tenth, nineteenth and twentieth causes of action are without merit, even if they were filed within the applicable statute of limitations. <u>Wright v. Oliver</u>, 1996 WL 531299, at *2, n. 2;  <u>Lynch v. Toys "R" Us - Delaware, Inc.</u>, 2007 WL 4230799, at *3.

16



## VI.

### (Remaining State and Federal Claims [except claims against Gay and Frank Watson])

The remainder of Plaintiff's state claims against the individually named solicitors and/or sheriff's deputies (seventh cause of action for abuse of process; eleventh cause of action for defamation; twelfth and twenty-first causes of action for outrage; and forty-seventh causes of action for conspiracy) are all subject to dismissal, inter alia, for failure to have been brought within the applicable statute of limitations. Plaintiff's remaining federal conspiracy claim (forty-eighth cause of action) is subject to dismissal for the same reason. See discussion, Section II, supra; see also Wallace v. Kato, 127 S.Ct. at 1095-1096 [false imprisonment].[9]

---

[9]While the undersigned concludes that these remaining causes of action are subject to dismissal for the reasons stated hereinabove, even if they were not, numerous other grounds exist for dismissal of Plaintiff's claims. Plaintiff's federal conspiracy cause of action fails because he has failed to allege that the conspiracy was motivated by a discriminatory animus. Thomas v. Roach, 165 F.3d 137, 145-146 (2d Cir. 1999) [to maintain a conspiracy claim under § 1985(3), a plaintiff must set forth facts to show that "some racial, or perhaps otherwise class-based, invidious discriminatory animus [lay] behind the [alleged] conspirators' action"]; Griffin v. Breckenridge, 403 U.S. 88, 102 (1971); Lee-Patterson v. N.J. Transit Bus Operations, Inc., 957 F.Supp. 1391, 1403 (D.N.J. 1997); Pravda v. City of Albany, 956 F.Supp. 174, 179-181 (N.D.N.Y. 1997); Koch v. Mirza, 869 F.Supp. 1031, 1038 (W.D.N.Y. 1994). See also Simmons v. Poe, 47 F.3d 1370, 1377 (4th Cir. 1995) ["We have specifically rejected Section 1985 claims whenever the purported conspiracy is alleged in a mere conclusory manner"].

As for Plaintiff's claim for abuse of process (seventh cause of action), Plaintiff would have to establish that his arrest and detention was "used to gain an objective not legitimate in the use of the process." First Union Mortgage Corp. v. Thomas, 451 S.E. 2d 907, 914 (S.C.App. 1994); Guider, 635 S.E.2d at 566. No such allegation is contained in Plaintiff's Complaint. Rather, he simply complains that he was unlawfully held by the South Carolina courts following his arrest in August 2003. Plaintiff's claim for defamation (eleventh cause of action) relates solely to comments made by the Defendant Solicitors during the course of his legal proceedings, and as such they are entitled to prosecutorial immunity from any such claim. Buckley v. Fitzsimmons, 509 U.S. 259 (1993); Burns v. Reid, 500 U.S. 478 (1991); Dababnah v. Keller- Burnside, 208 F.3d 467, 470 (4th Cir. 2000). This absolute immunity from suit applies when prosecutors are performing functions that require an exercise of their prosecutorial discretion, and encompasses a prosecutor's decision as to whether or not to go forward with a prosecution. See Pachaly v. City of Lynchburg, 897 F.2d
(continued...)



## VII.

### (Claims Against the Defendants Gay and Frank Watson)

Plaintiff's fortieth through forty-fifth causes of action are all asserted against the Defendants Frank Watson and Gay Watson.  These two Defendants are entitled to dismissal of all claims asserted against them for the simple fact that Plaintiff has made no allegations concerning these Plaintiffs with respect to any of the conduct or actions at issue in this case (i.e., occurring since August 21, 2003).

In order to maintain a claim against a party defendant, a plaintiff must set forth allegations establishing that the named defendant participated in, or was responsible for, the wrong-doing alleged in the complaint. *Cf.* Taylor, No. 04-5864, 2007 WL 1456155 at *3 ["Personal involvement in the alleged wrong-going must be shown."]; Thomas v. Independence Tp, 463 F.3d at 298.  A review of the allegations of Plaintiff's verified Complaint reveals that the Defendants Watson are never referred to in any of the allegations Plaintiff asserts with respect to conduct or actions occurring on or after August 21, 2003 (the only time period at issue in this lawsuit).

---

[9](...continued)

723 (4th Cir. 1990); Carter v. Burch, 34 F.3d 257 (4th Cir. 1994); Weller v. Dept. Of Social Services for the City of Baltimore, 901 F.2d 387 (4th Cir. 1990); Springmen v. Williams, 122 F.3d 211 (4th Cir. 1997).

With respect to the individually named sheriff's deputies, while Plaintiff asserts claims against these Defendants as part of his pre-2003 allegations, he fails to identify any of the three sheriff's department employees named as Defendants as being personally involved in any of the conduct occurring in 2003 or thereafter. *Cf.* Taylor v. Hendricks, No. 04-5864, 2007 WL 1456155 at *3 (D.N.J. 2007) ["Personal involvement in the alleged wrong-going must be shown."]; Thomas v. Independence Tp, 463 F.3d 285, 298 (3rd Cir. 2006).  Plaintiff's outrage claims against the solicitors and sheriff's deputies fail for these same reasons, as well as for other reasons. *Cf.* Eaton v. Paramount Parks, Inc., No. 96-2518, 1998 WL 163833 at **1, n.3 (4th Cir. Apr. 6, 1998) ["the initiation of criminal proceedings when there is probable cause to do so cannot constitute the intentional infliction of emotional distress"], citing Lewis v. First Nat'l Bank of Stuart, 645 F.Supp. 1499, 1506 (W.D.Va. 1986).



Specifically, there is no allegation or claim that either of these two Defendants played any role whatsoever in the criminal charges filed against the Plaintiff for threatening the life of a public official, nor do any of the three indictments filed against the Plaintiff make any reference to the Watsons.

Hence, whatever Plaintiff may feel about the merits of the charges filed against him on August 21, 2003 by the Solicitor for the Fourteenth Judicial Circuit in South Carolina, there are no allegations that the Watsons played any role in the filing of those charges or in the events that subsequently transpired.   Therefore, the Watsons are entitled to dismissal as party Defendants in this case.

**<u>Conclusion</u>**

Based on the foregoing, it is recommended that the Defendants' motions to dismiss be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

 

_____

Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

January 28, 2008

19



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

